UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MOHAMMAD AZAM HUSSAIN,

        Petitioner,

      v.                                                                   Case No. 07-C-0268

ALBERTO GONZALES,
Attorney General of the United States;
DEBORAH ACHIM, Field Office Director of
Detention and Removal Operations for the Chicago
Field Office of Immigration and Customs Enforcement;
THOMAS POLSIN, Deputy Jail Administrator of the
Dodge County Detention Center; and TODD NEHLS,
Sheriff of Dodge County, Wisconsin, ,

        Respondents.

## MEMORANDUM DECISION AND ORDER

Mohammed Azam Hussain filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the constitutionality of his detention by the Attorney General of the United States, and his designees, pending the completion of removal proceedings. An Immigration Judge (IJ) ordered Hussain's release on bond on February 24, 2007, but the Department of Homeland Security (DHS) filed a notice of intent to appeal to the Board of Immigration Appeals (BIA), thereby staying the IJ's order for release.[1] *See* 8 C.F.R. § 1003.19(i)(2). Although Hussain's original petition challenged the constitutionality of the regulation authorizing DHS to impose an automatic

---

[1] The Homeland Security Act transferred certain functions of the former Immigration and Naturalization Service (INS), which was part of the Department of Justice, to DHS. The officers of INS who made initial custody determinations are now officers of the Bureau of Immigration and Customs Enforcement (BICE), which is part of DHS.

stay on an IJ's order for his release, his claim has evolved, as the basis for his detention has shifted, to a more general claim that his extended detention throughout the course of his ongoing immigration proceedings is unconstitutional. For the reasons set forth below, Hussain's petition will be denied and the action dismissed.

## BACKGROUND

Muhammad Azam Hussain is a lawful permanent resident who was granted entry into the United States from his native Pakistan in October 1994 based on false travel documents, including an advance parole document, employment authorization card, and cab license. Following his entry, he married a United States citizen and now has a United States citizen daughter. He has worked as a chef and restaurant manager, a taxi cab driver, and construction worker. In August 1999, he became a Lawful Permanent Resident.

On June 13, 2005, Hussain was convicted in the United States District Court for the Northern District of Illinois of attempting to unlawfully procure citizenship in violation of 18 U.S.C. § 1425(a), making false statements in violation of 18 U.S.C. § 1001, and making a false claim to United States citizenship in violation of 18 U.S.C. § 911. Based on these convictions, the Department of Homeland Security (DHS) initiated removal proceedings against Hussain on July 27, 2005. In addition to the convictions themselves, which rendered Hussain removable under 8 U.S.C. § 1227(a)(2)(A)(ii), DHS also charged that Hussain was removable because he was inadmissible at the time of entry and had procured admission by fraud or willful misrepresentation of a material fact (8 U.S.C. § 1227(a)(1)(A)), and had falsely claimed to be a United States citizen (8 U.S.C. § 1227(a)(3)(D)).

2

Hussain was initially detained by Immigrations and Customs Enforcement, an agency of DHS, on July 26, 2005, after he was sentenced to the nine months he had already been in custody on the criminal charges. On September 26, 2005, Hussain filed applications for asylum, withholding of removal, relief under the United Nations Convention Against Torture,[2] cancellation of removal and a fraud waiver. Following a three-day merits hearing before an Immigration Judge (IJ), closing arguments were presented on May 24, 2006.

In the meantime, Hussain had appealed his criminal conviction to the United States Court of Appeals for the Seventh Circuit. In October 2006, the government revealed that it had failed to disclose classified information to Hussain prior to his trial on the criminal charges and moved to remand the case to the district court so that his convictions could be vacated and the indictment against him dismissed. The joint motion for dismissal states that "although the classified information does not bear on the guilt or innocence of [Hussain] as to the charges . . . . the failure to disclose the classified information provides, in the context of this case, a ground for a new trial." (Am. Pet. for Writ of Habeas Corpus, Ex. G, ¶ 4.) On November 9, 2006, the district court vacated the convictions and dismissed the indictment.

On October 11, 2006, in anticipation of the dismissal of the criminal charges, Hussain filed a request for release on bond pending a decision in the removal proceedings. Detention of aliens who are subject to removal proceedings is governed by 8 U.S.C. § 1226. Unless the alien falls within one of the classifications listed in § 1226(c), which includes aliens convicted of certain

---

[2]United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 1465 U.N.T.S. 85, G.A. Res. 39/46, 39th Sess. U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984).

3

specified crimes, as well as those who have engaged in terrorist activities, the decision to detain or release an alien pending a decision on removal is to be made initially by the Attorney General, or his designee. 8 U.S.C. § 1226(a). An alien who does not fall into a classification in which detention is mandated may seek review of a custody or bond determination by an IJ. 8 C.F.R. § 1003.19(a).

Notwithstanding the fact that his criminal convictions had been vacated, DHS opposed Hussain's request for release on bond, claiming that Hussain was a member of a terrorist organization who had engaged in terrorist activity, and thus his detention was mandatory under § 1226(c). Although DHS had not charged Hussain with being a member of a terrorist organization, it argued he was nevertheless subject to mandatory detention and the IJ was without jurisdiction to redetermine conditions of custody because he fell within the classification. Under DHS's view of the applicable regulation, the IJ was without jurisdiction to review an alien's detention if there was reason to believe he was a member of a terrorist organization, even if he was not so charged. The IJ rejected DHS's interpretation of the regulation, and following a hearing on Hussain's request, ordered Hussain released on a $40,000 cash bond on February 23, 2007. Recognizing "DHS's concerns that [Hussain] may present a threat to national security, or a flight risk," the IJ nevertheless concluded that dismissal of the criminal complaint constituted a factor meriting redetermination of bond and that $40,000 was an appropriate amount to ensure his appearance at future court appearances. (Pet., Ex. E., Mem. Op. and Order of IJ at 3.) On the same day, ICE filed a notice of intent to appeal the IJ's bond determination to the BIA and invoked the automatic stay provision set forth in 8 C.F.R. § 1003.19(i)(2).

4

On March 20, 2007, Hussain filed his original petition for habeas corpus in this court, claiming that the automatic stay authorized by 8 C.F.R. § 1003.19(i)(2) contravened the pre-removal deprivation scheme found in the Immigration and Nationality Act and violated his right to substantive and procedural due process under the Fifth Amendment. Hussain also claimed that the stay provision was unconstitutional as applied to him because of the particular length of his detention and because of the mode of prosecution of his criminal and immigration cases. He noted that he had been held in federal criminal custody for over nine months and then continued in custody from July 2005 through the present while his immigration proceedings were pending. He further noted that even though his merits hearing had concluded in April 2006, the Immigration Court had yet to issue a decision a year later. Continuing to hold him in custody while the government unreasonably delayed adjudicating his case, Hussain argued, violated his right to substantive due process. Hussain filed an amended petition less than a week later in which he added claims that respondents further violated his right to due process by seeking to hold him on an unconstitutional theory of mandatory detention and by continuing to withhold the evidence that had led to dismissal of the criminal charges against him.

In their initial return to Hussain's petition, respondents noted that on March 29, 2007, DHS withdrew its automatic stay and requested that the BIA issue an emergency stay of the IJ's bond decision pursuant to 8 C.F.R. § 1003.19(i)(1) until it was able to review it. On April 2, 2007, the BIA granted DHS's request for an emergency stay. As a result, respondents argued that Hussain's primary challenge to his continued confinement under the automatic stay was moot. Respondents also stated that they had requested an expedited decision from the IJ in the removal proceeding and, noting the ongoing nature of the proceedings and its need to review the lengthy record, requested an additional sixty days to file a complete response.

5

Hussain opposed respondents' request for an extension of time and requested the court to adjudicate the case as it stood. Rather than moot his claim for relief, Hussain argued that DHS's substitution of its own automatic stay of the IJ's bond order with an ex parte emergency stay issued by the BIA compounds the constitutional problems with his detention by depriving him of any opportunity to be heard. Based on the length of time he had already been in custody, the government's unreasonable delay in prosecuting his removal case, and the failure of the respondents to address the other claims set forth in his amended petition, Hussain urged the court to grant his petition and order his immediate release.

Upon reviewing Hussain's response, the Court set the matter for argument to be heard on May 4, 2007, and instructed the parties to be prepared to address both the substantive merits of the petition and the respondents' request for a sixty day extension of time to fully respond. In the meantime, on May 1, 2007, the IJ issued his decision in the underlying removal proceeding. In a twenty-page decision, the IJ found Hussain removable based on his initial entry on false or fraudulent documents and that his requests for asylum, cancellation of removal, and withholding of removal were barred because he was a member of a terrorist organization. Specifically, the IJ concluded that Hussain's involvement with Mohajir Qaumi Movement (MQM) and his membership in, and activities on behalf of, MQM-Haqiqi (MQM-H) rendered him inadmissible under section 212(a)(3)(B)(i)(VI) of the Act.[3] However, the IJ also concluded that because Hussain's involvement

---

[3] According to the IJ's decision, mohajirs are refugees from India who fled to Pakistan at the time India was partitioned creating the nation of Pakistan. MQM is an organization that was formed to protect the minority mohajir population of Pakistan against discrimination in the exercise of their social, economic and political rights. MQM-H is a splinter group within MQM. The IJ concluded on the basis of Reports on Human Rights Practices in Pakistan (Country Reports) prepared by the United States Department of State that MQM and MQM-H have shown a willingness to use violence, intimidation, and terrorism to achieve their goals. (IJ decision at 14.)

with MQM-H would likely make him subject to torture if he was returned to Pakistan, he was entitled to a deferral of removal under the CAT and the regulations adopting it.

Based on the IJ's decision, respondents filed a full response to Hussain's petition and withdrew their request for an extension of time. Noting that the IJ had now found Hussain removable as charged and that he had engaged in terrorist activity, and citing the need for judicial deference to the political branches of government in immigration cases generally and in particular when national security concerns are present, respondents argue that this Court has no jurisdiction to review the BIA's discretionary determination that Hussain remain in custody pending his removal. And since removal proceedings are still continuing, respondents contend there is a significant likelihood of Hussain's removal in the reasonably foreseeable future. In this regard, respondents note that DHS has filed an appeal from that portion of the IJ's decision finding Hussain eligible for deferral under the CAT, which if successful would result in Hussain's deportation to his native country of Pakistan. Even if the IJ's finding that Hussain is entitled to have his deportation deferred under the CAT is upheld, respondents note that this would not prevent his removal to another country. Thus, respondents argued, Hussain's continued detention remains reasonably related to his eventual removal.

Finally, on the very morning of the day the Court scheduled argument on Hussain's petition, the BIA issued its decision on DHS's appeal of the IJ's order to release Hussain on bond. The BIA held that the IJ had erred in concluding that an alien had to be charged with being a member of a terrorist organization within the meaning of 8 U.S.C. § 1227(a)(4) in order to be subject to mandatory detention under § 1236(c). The BIA observed that the applicable regulation provided that the IJ had no jurisdiction to redetermine conditions of bond if the alien fell within the scope of § 1227(a)(4), regardless of whether he was actually charged under that section. Since the IJ had

erred in his interpretation of the regulation, the BIA remanded that case to the IJ to determine whether Hussain was an alien properly described in § 1227(a)(4). *See Matter of Joseph,* 22 I&N Dec. 799 (BIA 1999). On May 14, 2007, counsel for Hussain advised the Court that the IJ had now issued his decision on remand and concluded that Hussain was ineligible for release on bond under 8 U.S.C. § 1226(c). According to the IJ, "the court's prior decision in removal proceedings along with BIA's order and decision make this the only order I can enter." (doc. #20 at 2.)

Notwithstanding these developments – the IJ's decision in the underlying removal proceedings, the BIA's decision vacating the IJ's order for release on bond, and the IJ's order denying Hussain's request for release – all of which occurred after he filed his petition with this Court, Hussain contends that he is entitled to relief under 28 U.S.C. § 2241. In light of the length of his detention and the circumstances surrounding it, he claims it is no longer rationally related to the Government's goal of effecting his removal and requests this Court to order his immediate release.

## ANALYSIS

**1. Jurisdiction**

The arrest, detention and release of aliens who are the subject of pending removal proceedings are governed by 8 U.S.C. § 1226. Section 1226(a) grants the Attorney General discretion to determine whether an alien should be arrested and detained, or released on bond or otherwise, pending removal proceedings. Section 1226(b) gives the Attorney General discretion to revoke a bond or parole under subsection (a). Section 1226(c), by contrast, mandates the detention of aliens who are inadmissible or deportable by reason of having committed certain crimes or who are deemed a threat to national or public safety. This includes aliens who are or have been

members of a terrorist organization. The discretionary decisions made pursuant to these provisions are not within any court's jurisdiction to set aside or review. Section 1226(e) states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). In light of this language, the first question that arises is whether this court has jurisdiction under 28 U.S.C. § 2241 to grant Hussain relief.

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court was called upon to determine whether the provision of § 1226(c) mandating detention of aliens convicted of aggravated felonies was constitutional. The threshold issue there, as here, was whether § 1226(e) deprived the Court of jurisdiction to review the case. A majority of the Court held that § 1226(e) applies only to "operational decisions" of the Attorney General, and not to the statutory framework for those decisions. *Id.* at 517 (*citing Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999)). The Court therefore concluded that § 1226(e) "does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail." *Kim*, 538 U.S. 517. Thus, it would appear that § 1226(e) forecloses challenges only to decisions implementing § 1226(c), as opposed to § 1226(c) itself. *Parra*, 172 F.3d at 957. Hussain's various claims for relief must therefore be addressed with this jurisdictional limitation in mind.

**2. DHS Automatic Stay Pending Appeal**

The first three claims for relief set forth in Hussain's amended petition for habeas corpus challenge the validity of 8 C.F.R. § 1003.19(i)(2), which provides for an automatic stay of an IJ's order for release of an alien in any case in which DHS has determined that an alien should not be

9

released or has set a bond of $10,000 or more upon DHS's filing of a notice of intent to appeal. Hussain's first claim is that the automatic stay regulation violates the INA and the APA, and his second and third claims are that it violates his rights to substantive and procedural due process under the Fifth Amendment.

Because Hussain is no longer being held on DHS's automatic stay, respondents argue that his challenges to the automatic stay provision are moot and need not be addressed by the court. The court agrees. As noted above, the case has proceeded significantly beyond the initial stage when Hussain was seeking release based on the IJ's bond order. DHS's automatic stay was replaced by a discretionary stay entered by the BIA, and even that stay is of no effect at this point since the BIA vacated the IJ's bond order and remanded the case for further proceedings. The IJ has now entered an order denying Hussain's request for release based on his finding in his merits decision that Hussain was a member of a terrorist organization. Thus, it makes no difference at this point whether the regulation authorizing DHS to impose an automatic stay on the IJ's order for his release on bond is invalid. Hussain is no longer being held under such a stay, and the IJ's order of release on bond is no longer in effect. The first three claims for relief in Hussain's amended petition are therefore moot.

Even if Hussain's challenge to the automatic stay provision of § 1003.19(i)(2) was not moot, he would still not be entitled to relief on that basis. The purpose of the automatic stay provision is to provide a means for DHS to maintain the status quo in those cases where it chooses to seek an expedited review of the IJ's custody order by BIA. 71 Fed. Reg. 57873. To the extent the challenged regulation represents the judgment of the Attorney General as to how best implement the authority granted him by 8 U.S.C. § 1226, judicial review may be barred by § 1226(e). But even if it is not, providing for an automatic stay until the BIA can review the IJ's order for release is not

10

unreasonable. The cases upon which Hussain relies to support his argument that the regulation violates due process addressed the previous regulation under which the duration of the automatic stay was indefinite. *See, e.g., Zavala v. Ridge*, 310 F. Supp.2d 1071, 1075 (N.D. Cal. 2004). The current regulation provides that the automatic stay will lapse 90 days after the filing of the notice of appeal. 71 Fed. Reg. 57873, 57874.

It also appears that the lower court decisions finding the automatic stay provision invalid were based on a misunderstanding of the relationship between DHS, the IJs, and the BIA, and their respective roles in exercising the authority of the Attorney General to make custody determinations in cases involving the removal of aliens. As the Attorney General explained in connection with the implementation of the current regulation,

> In most cases, an immigration judge's order granting an alien release will result in the alien's release upon the posting of bond or on recognizance, in compliance with the immigration judge's decision. The Attorney General has determined, however, that certain bond cases require additional safeguards before an alien is released during the pendency of removal proceedings against him or her. In these cases, the immigration judge's order is only an interim one, pending review and the exercise of discretion by another of the Attorney General's delegates, the Board. Barring review by the Attorney General, it is the Board's decision that the Attorney General has designated as the final agency action with respect to whether the alien merits bond. Thus, the Attorney General made an operational decision under section 236(a) of the INA with respect to how his discretion should be exercised in a limited class of cases where DHS, which now has independent statutory authority in this area, had sought to detain the alien without bond or with a bond of $10,000 or more and disagrees with the immigration judge's interim custody decision.

71 Fed. Reg. 57873, 80. In essence, the challenged regulation reveals the division of authority the Attorney General has established within the executive branch to exercise his overall authority to determine the custodial status of aliens facing removal proceedings. It is difficult to see how DHS's exercise of its responsibilities within that system operates as a denial of due process. For this reason, as well, the Court rejects Hussain's challenges to his detention under the automatic stay.

11

**3. Hussain's Mandatory Detention**

Hussain's fourth claim for relief in his amended petition is that his detention violates his right to due process because "Respondents are detaining him based on an unconstitutional theory of mandatory detention." (Am. Pet. at 17.) Hussain contends that the government's theory that its determination that he is a member of a terrorist organization, without even making a formal charge to that effect, precludes review by the IJ of the decision to detain him and, in fact, mandates his detention, violates his right to due process of law by depriving him of notice and an opportunity to be heard. (*Id.*) In their brief opposing Hussain's petition, respondents argued that this claim was also moot since, at the time they responded, the automatic stay DHS had imposed had been replaced by the BIA's discretionary stay. Respondents also noted that the allegedly invalid basis of detention was not relied upon by the IJ and was not mentioned in the BIA's stay decision. (Resp. at 33.) In any event, respondents argued the claim was factually incorrect because while it did claim the authority under 8 C.F.R. § 1003.19(c)(2)(C) to determine custody with respect to aliens it believed were engaged in terrorist activity, this did not preclude an alien from presenting evidence in support of his request for release. (*Id.* at 33, n.10.)

As the case has developed since the petition was filed Hussain's fourth claim for relief is not moot. What Hussain initially described as the government's theory of detention has become the actual basis for his detention. The BIA rejected the IJ's conclusion that an alien had to be charged under 8 U.S.C. § 1227(a)(4) with removability on the ground of terrorist related conduct in order to divest the IJ of jurisdiction over his custody status. Based on its interpretation on 8 C.F.R. § 1003.19(h)(2)(i)(C), the BIA concluded that it was enough if DHS had "reason to believe" that the alien was a member of a terrorist organization for the IJ to be divested of jurisdiction to

12

redetermine his custody. (BIA Dec. at 2.) However, the BIA also noted that an alien detained under § 1003.19(h)(2)(i)(C) had the right to offer evidence and legal authority on the question whether DHS has properly included him among the classes of aliens over which the IJ does not have bond jurisdiction. (*Id.*) The BIA therefore remanded the case to the IJ to allow Hussain to challenge DHS's classification of him. However, since in the meantime, the IJ had issued his decision in the removal proceedings in which he specifically found that Hussain was a member of a terrorist organization, the IJ concluded that no further hearing was needed. The IJ thereupon denied Hussain's request for a change in custody status. Thus, his present detention is mandated by the determination that he is a member of a terrorist organization.

That determination, however, is now not simply that of DHS. The IJ found Hussain had engaged in terrorist activities after a full hearing on the issue. Although DHS did not seek Hussain's removal under 8 U.S.C. § 1227(a)(4), it successfully asserted that he was barred from asylum, withholding of removal under INA 241(b), cancellation of removal and voluntary departure because he had engaged in terrorist activities. In his decision on the merits of the removal action, the IJ found the terrorist bar applicable. While Hussain is free to challenge the IJ's finding before the BIA, this Court has no authority to overturn it. Thus, in the present posture of the case, the Court cannot say that Hussain's mandatory detention under 8 U.S.C. § 1226(c) violates due process. There is no claim that Hussain did not have notice of DHS's contention that he was ineligible for relief from removal by virtue of his involvement in terrorist activities, and the IJ's determination followed a full hearing on the merits. It follows that Hussain was afforded the procedural protections mandated by due process.

As to substantive due process, the rationale for detaining aliens involved in terrorist activity pending completion of removal proceedings is as strong as it is obvious. National security concerns

13

overwhelmingly support such a policy. If mandatory detention for aliens allegedly removable for commission of a crime is constitutional as the Court held in *Kim*, it necessarily follows that mandatory detention of aliens found to be involved in terrorist activity is constitutionally sound as well. The court therefore rejects Hussain's fourth claim for relief.

**4. Excessive Length of Detention**

For his fifth claim for relief, Hussain contends that his detention violates substantive due process because of its extraordinary length. (Pet. at 17.) Hussain has been in ICE custody since removal proceedings began in July 2005. Although the Supreme Court upheld mandatory detention pending completion of removal proceedings for aliens removable for conviction of a crime in *Demore v. Kim*, Hussain contends that the Court's decision was based on the fact that aliens removed on the ground of a prior conviction spent an average of 47 days (a medium of 30 days) in custody before the initial determination by an IJ, and an average of four months more if they appealed to the BIA. 538 U.S. at 529. Because his detention has significantly exceeded the average length of confinement upheld in *Kim,* Hussain contends his rights have been violated.

Hussain misreads *Kim*. Although the average time it took to complete removal proceedings was a consideration in *Kim*, the Court did not adopt a limit for the amount of time an alien awaiting completion of removal proceedings could be constitutionally detained. Instead, the Court rested its decision on the longstanding principle of immigration law that "detention during removal proceedings is a constitutional part of that process." 538 U.S. at 531; *see also Carlson v. Landon*, 342 U.S. 524 (1952) (upholding authority of Attorney General to detain without bail resident aliens deportable because of their participation in Communist activities); *Wong Wing v. United States*, 163

14

U.S. 228, 235 (1896) ("Proceedings to exclude or expel would be vain if those accused could not be held in custody pending the inquiry into their true character, and while arrangements were being made for their deportation.").

In upholding mandatory detention of aliens pending completion of removal proceedings in *Kim*, the Court sharply contrasted the limited period of detention at issue in that case from the indefinite period of post-removal detention it found unconstitutional in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Court considered a due process challenge to the continued post-removal detention of aliens whose countries of origin would not accept them. To avoid the serious constitutional questions that would be raised by a statute that permitted indefinite detention, the *Zadvydas* Court construed 8 U.S.C. § 1231, which authorizes the Attorney General to detain an alien subject to a removal order beyond the 90-day removal period, to permit such detention for only such time as is reasonably necessary to secure the alien's removal. In *Kim*, by contrast, the Court noted that the detention was "of a much shorter duration." 538 U.S. at 528. Pre-removal detention is authorized only so long as it is necessary to complete the removal proceedings. While the time needed to complete such proceedings may vary, it is not indefinite.

Hussain contends that other courts have found pre-removal detention for lengthy periods of time unconstitutional. But in most of the cases he cites, there was already a strong suggestion that removal was not a practical possibility, even though the removal proceeding was not yet complete. In *Ly v. Hanson*, 351 F.3d 263 (6th Cir. 2003), for example, the court concluded petitioner's removal to his native Vietnam was not reasonably foreseeable because Vietnam generally did not accept the return of its nationals. 351 F.3d at 263. Likewise, in *Nadarajah v. Gonzales*, 443 F.3d 1069, 1081 (9th Cir. 2006), even though the removal proceedings were not complete, the court

15

found that the alien had "established that there is no significant likelihood of his removal in the reasonably foreseeable future." In that case, the alien had already been detained five years. The IJ had not only granted the alien deferral of removal under the CAT (which, unlike here, was unchallenged), but also granted asylum, which the BIA had affirmed. The case was then certified to the Attorney General. Based on these facts, the court found no significant likelihood that Nadarajah would be removed in the reasonably foreseeable future and that his continued detention was unreasonable. *Id.* at 1080.

Here, by contrast, Hussain has been found removable by the IJ and ineligible for asylum or other relief because of his involvement with terrorism. Although the IJ also found that Hussain was entitled to deferral of removal under the CAT, DHS is appealing that determination. In light of the fact that Hussain has twice returned to Pakistan without being harmed – for a month in January, 2004 to visit his mother and again for almost four weeks in July, 2004, to sing at a friend's wedding – DHS's appeal is not wholly without merit. Moreover, even if not successful on its appeal, DHS can still seek diplomatic assurances from Pakistan or, alternatively, pursue removal to countries other than Pakistan. *See* 8 U.S.C. § 1231(b)(2); 8 C.F.R. § 1208.17(f); *see also Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 344 (2005). Given the procedural posture of the case and in light of these potential outcomes, this court cannot find there is no significant likelihood of Hussain's removal from the United States in the reasonably foreseeable future. Absent such a finding, neither *Ly v. Hanson* nor *Nadarajah v. Gonzales* support Hussain's claim to habeas relief at this point in the proceeding.

*Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005), is more supportive of Hussain's position. In that case, a divided Ninth Circuit panel reversed a district court's decision denying the petition

16

for a writ of habeas corpus by an alien who had been detained under 8 U.S.C. § 1226(c) for more than two years and eight months awaiting completion of the proceedings to remove him for commission of a crime. After first distinguishing the case before it from *Denmore v. Kim*, where the alien conceded deportability, the majority interpreted that authority conferred by § 1226(c) as applying to expedited removal of criminal aliens. *Tijani*, 430 F.3d at 1242. Observing that two years and eight months of process is not expeditious and that the time remaining before the Court of Appeals entered a decision on the removal issue was a year or more, the court remanded the case to the district court with instructions to grant the writ unless the government grants a bail hearing within sixty days. *Id.* But even in *Tijani*, one of the judges writing for a divided majority concluded that "Tijani almost certainly has a winning argument that he is not removable for having committed an aggravated felony." *Id.* at 1247 (Tashima, J., concurring). Thus, in that case, too, it was at least questionable whether removal was likely to occur in the foreseeable future.

Also missing from the foregoing cases is the national security interest that arises when there is evidence the alien subject to removal is alleged to have been involved in terrorist activities. *Ly v. Hanson*, *Nadarajah v. Gonzales* and *Tijani v. Willis* all involved aliens whose removal was sought because of the commission of a crime. The Supreme Court has acknowledged, however, that where terrorism is a concern, "special arguments might be made for forms of preventive detention and for heightened deference to the judgments of the political branches with respect to matters of national security." *Zadvydas v. Davis*, 533 U.S. at 696. As already noted, the finding that Hussain has engaged in terrorist activities has been made in this case. This finding was the basis for the IJ's conclusion that he was barred from asylum and cancellation of removal. And this court has no jurisdiction to review such a finding. 8 U.S.C. § 1252(a)(5), (b)(9). This consideration also supports the position of respondents that this court is without jurisdiction to order Hussain's release.

17

**5. Withholding of Evidence**

Finally, Hussain's sixth claim for relief is that his detention violates his right to due process inasmuch as respondents have withheld evidence that is favorable to him. The evidence referred to is the classified information the existence of which Hussain became aware when the government informed him of its intent to move that his criminal convictions be vacated and the charges dismissed. But as respondents point out, this is really a challenge to the underlying removal proceedings over which this court lacks jurisdiction. Judicial review of removal proceedings is entrusted to the Court of Appeals. 8 U.S.C. § 1252(a)(5). Even if this court did have jurisdiction over the issue, the claim would be denied. There is no general right of discovery in deportation proceedings. *Kalejs v. INS*, 10 F.3d 441, 448 (7th Cir. 1993). And aliens subject to deportation have no right to classified information. 8 U.S.C. § 1229a(b)(4); *Jay v. Boyd*, 351 U.S. 345 (1956). The court therefore concludes that respondents' failure to disclose classified information concerning his criminal case does not entitle him to release on bond pending completion of the removal proceedings.

## CONCLUSION

For the reasons set forth above, the court finds that Hussain is not entitled to issuance of a writ of habeas corpus. His petition is therefore denied and this matter shall be dismissed. The clerk is directed to enter judgment accordingly.

**SO ORDERED** this    22nd    day of May, 2007.

                                                  s/ William C. Griesbach
                                                  William C. Griesbach
                                                  United States District Judge